## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

KARRIE ANN SHANNON,      )
                                    )

          **Plaintiff,**     )

     **v.**                       )       **Case No. CIV-15-361-JHP-SPS**

                                    )

NANCY A. BERRYHILL,       )
**Acting Commissioner of the Social**  )
**Security Administration,**[1]      )

                                    )

          **Defendant.**    )

## REPORT AND RECOMMENDATION

The claimant Karrie Ann Shannon requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: whether the decision was supported by substantial evidence, and whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on December 20, 1973, and was thirty-nine years old at the time of the administrative hearing (Tr. 89). She completed four or more years of college, and has worked as a safety inspector and general inspector (Tr. 76, 254). The claimant alleges she has been unable to work since June 30, 2003, due to back pain, fibromyalgia, gout, rheumatoid arthritis, joint pain, stiffness, myopia, astigmatism, dry eye syndrome, renal calculi, blepharitis, bilateral heel spurs, and swollen lymph nodes (Tr. 253).

## Procedural History

On November 2, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Bernard Porter held an administrative hearing and determined the claimant was not disabled in a written decision dated March 17, 2014 (Tr. 64-78). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that from June 30, 2003 through December 31, 2006, her date last insured, the claimant retained the residual functional capacity (RFC) to perform a range of sedentary work, but could occasionally climb ramps and stairs, and never climb ladders or scaffolds, crawl,

work around unprotected heights or moving mechanical parts, or work in temperature extremes. He further found that time off tasks would be accommodated by normal breaks, but that she would be allowed a sit/stand option to change positions every thirty minutes (Tr. 69). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e*., touch-up screener, suture winder, and table worker (Tr. 76-77).

## Review

The claimant contends that the ALJ failed to: (i) evaluate the opinion of her chiropractor, (ii) properly consider her subjective symptoms, and (iii) account for all her impairments in formulating the RFC. The undersigned Magistrate Judge agrees with the claimant's second contention, and the Commissioner's decision should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of kidney stones, gout, obesity, fibromyalgia, rheumatoid arthritis, cervical, thoracic, and lumbar strain, and sleep apnea, as well as the nonsevere impairments of myopia, astigmatism, dry eye syndrome, blepharitis, heel spurs, and swollen lymph nodes (Tr. 68). The medical evidence during the relevant time period (June 2003 through December 2006) reveals that the claimant was treated for a viral upper respiratory infection (Tr. 529-530), and one kidney stone (Tr. 613, 737), and treatment notes from this time reflect she had a history of rheumatoid arthritis (Tr. 547). In 2004, the claimant gave birth (Tr. 1244). Her obstetrician prepared a letter stating that her arthritis had been stable through her

pregnancy but that she started cramping and bleeding at thirty weeks, and underwent twice-weekly non-stress tests for monitoring (Tr. 1244).

She began receiving chiropractic treatment from Dr. Brian Chadsey in August 2005, and treatment notes reflect improvement in her pain level and with movement (Tr. 579-580). On September 6, 2006, Dr. Chadsey noted that the claimant had very little pain and no stiffness/soreness (Tr. 580). On October 11, 2005, she reported that her middle back felt fine and she had only had foot pain once in the previous month (Tr. 581). She continued to report occasional flare-ups through 2006 (Tr. 581-582). On November 16, 2010, Dr. Chadsey prepared a letter stating that he had treated the claimant since August 26, 2005, and that she had ongoing problems with mid to low back pain and neck pain, which was episodic. He did state, however, that it was "debilitating" when it presented with occasional spasms, edema, loss of range of motion, and loss of normal bio-mechanical joint function (Tr. 1246). He then stated that she responded well to chiropractic manipulation and occasional interferential treatment, which kept the pain away and allowed her to function (Tr. 1246). On November 15, 2012, Dr. Chadsey completed a medical opinion regarding absences from work, opining that she would be absent about three or more days per month due to pain and illness due to inflammation of swelling in joints, lymph nodes, and other tissues (Tr. 1238). He further indicated that the claimant could not maintain concentration and attention for extended periods in a routine work setting, and could not be expected to attend any employment on a sustained basis (Tr. 1239). On October 23, 2013, Dr. Chadsey prepared another letter, indicating that he treated the claimant for thoracic, lumbar, and sacral pain, and once for neck pain,

and that her problems were complicated by her rheumatoid arthritis (Tr. 1419). He then stated that she worked for him part-time from August 2010 through February 2011, and that some of her duties increased her pain but that he made accommodations for her, and that he terminated her employment based on scheduling conflicts, not performance (Tr. 1419).

On October 20, 2012, Dr. James McKay saw the claimant as a new patient. He noted she reported joint pain and a history of rheumatoid arthritis, but found her presentation more consistent with osteoarthritis (Tr. 982).

In his written opinion, the ALJ extensively summarized the medical record, both from the insured period and the substantial medical records from outside the insured period that were submitted, as well as provided a lengthy recitation of the claimant's own testimony (Tr. 69-76). After summarizing the claimant's testimony, the ALJ noted that most of the treatment notes in the record were after the claimant's date last insured, but he nevertheless summarized them all (Tr. 72-76). He noted that the claimant worked part time after the alleged onset date, and that she did not quit due to her impairments (Tr. 74). He gave some weight to the opinions of the state reviewing physicians, who found that she did not have a severe impairment prior to the date last insured, and gave little weight to Dr. Chadsey's opinion that she would miss more than three days of work per month, because he was a chiropractor and not a medical doctor, and his opinion was given six years after the date last insured (Tr. 74).

The claimant contends, *inter alia*, that the ALJ erred in analyzing her credibility. At the time of the ALJ's decision, a credibility determination was governed by Soc. Sec.

Rul. 96-7p. *See, e .g., Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (July 2, 1996). But the Commissioner issued a ruling on March 16, 2016, that eliminated the term "credibility" and provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016). "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007), *quoting Sloan v. Astrue,* 499 F.3d 883, 889 (8th Cir. 2007). Although the ALJ's credibility analysis was arguably sufficient under the old standard, the record does not reflect how the ALJ would have evaluated the claimant's subjective statements under Soc. Sec. Rul. 16-3p.[3] Consequently, the decision of the Commissioner must be reversed and the case remanded to the ALJ for evaluation in accordance with the new standard.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the

---

[3] While it is arguable that the evidence cited by the ALJ in support of his credibility determination would likewise have satisfied Soc. Sec. Rul. 16-3p, thus obviating the need for reversal and remand, *see, e. g., Wellenstein v. Colvin,* 2015 WL 5734438, at \*11 (N.D. Iowa Sept. 30, 2015) (noting that the Court of Appeals for the Eighth Circuit denied remand for consideration of a new social security ruling upon finding that "although the policy changed during the pendency of the case, the policy did not affect the case."), *citing Van Vickle v. Astrue,* 539 F.3d 825, 829 n.6 (8th Cir. 2008), the undersigned Magistrate Judge finds that any re-evaluation of the evidence in light of the new standard is not for this court to make on review but rather for the ALJ to consider in the first instance.

case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

      **DATED** this 2nd day of March, 2017.

                         _____

                         **STEVEN P. SHREDER**
                         **UNITED STATES MAGISTRATE JUDGE**